**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

**FRANCISCO CRUZ ALICEA**, et al.

   Plaintiff,

      v.

**PUERTO RICO WATER AND SEWER
AUTHORITY**, et al.

   Defendant.

**CIVIL NO. 02-1383 (SEC)**

## REPORT AND RECOMMENDATION

This is an action for compensatory and punitive damages brought by the plaintiff, Francisco Cruz-Alicea ("Cruz-Alicea") against his former employer Puerto Rico Aqueduct and Sewer Authority ("PRASA") and Compañía de Aguas de Puerto Rico ("CAPR")/Professional Services Group ("PSG") (jointly referred to as "defendants"), alleging race and national origin based discrimination. Cruz brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended by the Civil Rights Act of 1991, with supplemental jurisdiction claims as to Puerto Rico Law No. 17 of April 22, 1988; Law No. 100 of June 30, 1959, as amended, 29 L.P.R.A. § 146 et seq.; and Articles 1802 and 1803 of the Puerto Rico Civil Code. The Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. §1332. Cruz alleges that because of his race and national origin, he was subjected to a hostile work environment and was eventually forced to resign.

Defendants now move, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, for judgment as a matter of law with respect to Cruz-Alicea's Title VII cause of action and the supplemental state claims. The issues presented are whether Cruz-Alicea's Title VII claims are time barred, whether he established a *prima facie* case of hostile work environment, and, whether his employer retaliated against him.

**CIVIL NO. 02-1383 (SEC)**                     2

**I. Factual Background**

Cruz-Alicea, of Puerto Rican descent, began working for PRASA on or about 1989. *Complaint* (Docket No. 1). PRASA is a public corporation created under the laws of the Commonwealth of Puerto Rico to run the public aqueduct and sewer system. On or about 1995, PRASA contracted with PSG to manage and administer the services provided by PRASA. On September 5, 1996 Cruz-Alicea was promoted from Deputy Project Inspector for Construction Projects to Operations Supervisor II for the Guayama Zone. While Operations Supervisor II, Cruz-Alicea was assigned to work as Interim Guayama Zone Engineer from August 1 thru October 31, 1997. *Statement of Contested Facts*, p. 1,2 (Docket No. 109). Every time the position was vacant, Cruz-Alicea was assigned to work as Interim Director of the Guayama area between 1997 and 1998.

On or about June 1, 1999 Cristophe Meiller ("Meiller"), of French descent, was named Joint Director for PSG/CAPR for the Guayama area. *Complaint* (Docket No. 1). After Meiller's arrival, Cruz-Alicea maintained his position as Administrator of the Guayama area, and worked alongside Meiller. **Plaintiff's Appendix R**, *Winnie Carrasquillo's Statement Under Penalty of Perjury*, p. 28-29 (Docket No. 114). On July 1999, Frederick Puillet ("Puillet"), of French descent, arrived at the Guayama Operations Office and was appointed Operations Coordinator for the Guayama Area for CAPR/PSG. *Statement of Uncontested Facts*, p. 3 (Docket No. 96). Later, on August 9, 1999, Cruz-Alicea was given a notice by Fernando Pina ("Pina") informing him that he would be suspended from work, without pay, for 21 days. Pina alleged that Cruz-Alicea had rented two vehicles and used PSG's credit account for such leases. After a reassessment of the matter, the investigation was dropped due to the fact that there was "reasonable doubt" as to his intentions, and the incident was removed from his employee file. **Defendants' Appendix I**, *August 9,1999 Letter from Fernando Pina*, p. 6-11 (Docket No. 96). On August 18, 1999, Cruz-Alicea wrote Meiller a letter confirming Meiller's verbal approval of his vacation leave. **Defendants' Appendix I**, *Cruz-Alicea's August 18, 1999 letter to Meiller*, p. 12 (Docket No. 96). Subsequently, Cruz-Alicea filed a formal grievance to PRASA's Human Resources Department alleging race and national origin based discrimination. **Defendants' Appendix C**, *September 22, 1999 Letter to José Nieves Maldonado,* p. 4 (Docket No. 96). On December 30, 1999 a controversy sprung from the Stand-by work shifts. Apparently, these

**CIVIL NO. 02-1383 (SEC)**                3

shifts were from Friday to Friday at 4:00 p.m. **Plaintiff's Appendix T and U**, *Wilma Porrata and Margarita Arzola's Statements Under Penalty of Perjury*, p. 28-29 and 32-33  (Docket No. 114). On January, Meiller excluded Cruz-Alicea from the stand-by assignment program for the January-April 2000 trimester.

On March 1, 2000, Cruz-Alicea filed a complaint against PRASA before the Anti-discrimination Unit of the Puerto Rico Department of Labor ("ADU") and the Equal Employment Opportunity Commission ("EEOC") alleging race-color, national origin and retaliatory harassment. **Defendants' Appendix S**, *Memorandum in Support of Motion for Summary Judgment*, p. 42-44 (Docket No. 96). Cruz-Alicea alleged the same discrimination complaints he had alleged on his September 22,1999 letter to José Nieves Maldonado and included all of the incidents, as stated in the above paragraphs, that occurred after his initial complaint. **Defendants' Appendix I**, *Statement of Uncontested Facts*, ¶22 and ¶23 (Docket No. 96).

**I. Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Pagano v. Frank, 983 F.2d 343, 347 (1st Cir.1993); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial" Fed. R. Civ. P. 56(e). The court must view the record in the light most favorable to the party opposing summary judgment, including all reasonable inferences in the nonmoving party's favor. See id. "If, after canvassing the material presented, the district court finds some genuine factual issue remains in the case, whose resolution one way or the other could affect its outcome, the court must deny the motion." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "The movant's burden is particularly rigorous when the disputed issue involves questions of motive or intent, since in these cases jury judgments about credibility are typically thought to be of special importance." Lipsett V. Univ. of P.R., 864 F.2d 881,895 (1st Cir. 1988). In a discriminatory employment action case, a plaintiff, "will rarely, if ever, be able to produce a 'smoking gun' that provides direct, subjective evidence of an employer's animus." Stepanischen v.

**CIVIL NO. 02-1383 (SEC)**                    4

Merchs. Despatch Transp. Corp., 722 F.2d 922,928 (1st Cir. 1983). "Rather, a plaintiff must try to

convince the fact-finder to draw an inference from a broad array of circumstantial and often

conflicting evidence..." Id. However, even in these cases, the Court will not refuse to grant summary

judgment in favor of the defendant if the plaintiff's claim rests merely upon "conclusory allegations,

improbable inferences, and unsupported speculation.'" Suárez v. Pueblo Int'l Inc., 229 F.3d 49, 53

(1st Cir. 2000) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5,8 (1st Cir. 1990)).

**II. Legal Analysis**

A. Applicable Statute of Limitations

Defendants argue that Cruz-Alicea's Title VII claims are time-barred. *Memorandum in

Support of Motion for Summary Judgment* (Docket No. 95).  Title 42 of the United States Code,

section 2000e-5(e) provides that a charge shall be filed with the EEOC "within one hundred and

eighty days after the alleged unlawful employment practice ocurred", or within 300 days after the

unlawful employment practice if "the person aggrieved as initially instituted proceedings with an

authorized State or local agency." Id. Due to Puerto Rico's standing as a "deferral jurisdiction", the

applicable period is 300 days. See Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 278 n.4 (1st

Cir. 1999).

Discrete retaliatory or discriminatory acts "occur", for purposes of the charge filing

requirement of Title VII, upon the date the same occur, such that a plaintiff must file a charge with

the EEOC after 300 days of the date of the alleged act, or lose his ability to recover for it in a Title

VII action. Nat'l R.R. Passenger Corp. V. Morgan, 536 U.S. 101, 122 (2002). However, in a hostile

work environment action under Title VII, the statute of limitations requiring the plaintiff to file a

complaint with the EEOC within the 300 days of the alleged unlawful employment practice is

satisfied as long as the plaintiff files a charge within 300 days of one of the many acts that, taken

together, created the hostile work environment. 42 U.S.C. §2000e-5(e)1; see Marrero v. Goya of

P.R., Inc., 304 F.3d 7, 18 (1st Cir. 2002). Nevertheless, Morgan, "does not stand for the proposition

that any timely allegation can properly anchor an untimely allegation." Paquim v. MBNA Marketing

Sys., 233 F. Supp. 2d 58, 63 (D. Me. 2002). "Rather, pursuant to Morgan, a plaintiff's untimely

allegations may be considered for the purposes of determining liability only if an act contributing

**CIVIL NO. 02-1383 (SEC)**                              5

to the hostile work environment occurs within the filing period." Id., (citing Morgan, 536 U.S. at

112). According to his claim before the EEOC, Cruz-Alicea alleges that from June 1999 until March

2000 he was discriminated against, for which, he filed a complaint at the EEOC on March 1, 2000.

In order for his complaint to be timely, he must allege that a specific discriminatory act occurred

within the 300 day period prior to the date he filed the complaint. In the instant case, that date is June

1999.

Cruz-Alicea has set forth evidence of various alleged incidents ocurred between said month

and his EEOC complaint. Namely, (1) Cruz-Alicea was asked to vacate his office for Meiller to

occupy it; (2) Cruz-Alicea was stripped of the authority to approve warehouse requisitions; (3) his

proposed suspension from work; (4) Cruz-Alicea's exclusion from the stand-by assignment program

for the January-April 2000 trimester; and (5) Meiller's comments that Puerto Ricans were "stupid",

"cavemen", and "nobodies". **Defendants' Appendix C, I, T, U** (Docket No. 96) and **Plaintiffs'**

**Appendix Q, R** (Docket No. 114). The evidence of record establishes that all such acts purportedly

ocurred between June 1999 and March 1, 2000. Consequently, the Court finds that Cruz-Alicea has

set forth sufficient evidence at this, the summary judgment stage, to warrant **DENIAL** of defendants'

summary judgment request as to the statute of limitations issue.

B. Hostile Work Environment

"Hostile environment" harassment occurs when one or more supervisors or co-workers create

an atmosphere so infused with hostility toward members of one race that they alter the conditions

of employment. Lipsett v. University of P.R., 865 F.2d 881, 897 (1st Cir. 1988). For purposes of Title

VII, the question as to whether a work environment is objectively hostile or abusive, must be

answered by reference to all the circumstances, including the frequency of the discriminatory

conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive

utterance; and, whether it unreasonably interferes with an employee's work performance. Marrero

v. Goya of P.R., 304 F.3d 7, 28 (1st Cir. 2002). Moreover, the Supreme Court in Oncale v. Sundower

Offshore Servs., reiterated that "whatever evidentiary route the plaintiff chooses to follow, he or she

must always prove that the conduct at issue was not merely tinged with offensive connotations, but

actually constituted discrimination... based on [national] [origin]." 523 U.S. 75, 78 (1998).

**CIVIL NO. 02-1383 (SEC)**                          6

Cruz-Alicea claims that a hostile work environment existed at PRASA, specifically in the office for the Guayama region. To that effect, Cruz-Alicea points to numerous instances of alleged harrasing behavior, such as (1) being asked to vacate his office for Meiller to occupy it; (2) being stripped of the authority to approve warehouse requisitions, even though he maintained director status; (3) on August 1999 he was notified of a disciplinary action; (4) disparaging comments; (5) Meiller did not approve in writing Cruz-Alicea's vacation leave request until a week before the scheduled vacation; (6) upon returning from vacation, Cruz-Alicea received comments that he would be transferred out of Guayama, and that the CAPR official vehicle he has assigned would be taken away from him and that there were attempts to assign his office to Puillet; (7) he was never informed of Puillet's position or duties; (8) on December 13, 1999, Cruz-Alicea sent Meiller, Guzmán and Calderón a memorandum requesting their endorsement for the drilling of a water well to supply water to an expansion of the Guayama Penitentiary. Meiller did not approve said memorandum, in turn, Meiller instructed certain improvements to an existing well, the "Fiber Well"; (9) being stripped of his authority to sign documents as Area Administrator; (10) being required to obtain Meiller's approval when sending documents outside of the Guayama area; (11) his exclusion from the stand-by assignment program for the January-April 2000 trimester; (12) on January 15, 2000 Cruz-Alicea showed up to a work site in the Guayama area on his day off, only to be told by Meiller that he was not needed and asked if he wanted to get in trouble. **Defendants' Appendix I, K, N, O** (Docket No. 96).

Viewing the facts and evidence in the light most favorable to Cruz-Alicea, the Court concludes that the referenced instances create an issue of fact as to the degree of the environment's hostility. A more fact-intensive analysis is required to truly gauge the severity, or lack thereof, of Cruz-Alicea's work environment. Thus, the Court concludes that Cruz-Alicea has pointed to specific incidents of alleged harassing behavior to survive summary judgment. Consequently, the Court **RECOMMENDS** that defendants' request for summary judgment as to Cruz-Alicea's hostile work environment claim be **DENIED**.

**CIVIL NO. 02-1383 (SEC)**                    7

C. Retaliation

       1. Cruz-Alicea's *prima facie* case

      Lastly, Cruz-Alicea contends that the defendants retaliated against him for filing an EEOC complaint. Cruz-Alicea has presented only circumstantial evidence of discriminatory retaliation. In such cases, the Court must use the burden-shifting analysis first established by the Supreme Court in McDonnell Douglas Corp. V. Green, 411 U.S. 792 (1973). See Feliciano de la Cruz v. El Conquistador Resort & Counrty Club, 218 F.3d 1, 6 (1st Cir. 2000). Under the McDonnell Douglas analysis, in order to establish a *prima facie* case of retaliation, plaintiff must demonstrate by a preponderance of evidence that: "(1) he engaged in protected conduct under Title VII; (2) he suffered an adverse employment action; and (3) the adverse action is causally connected to the protected activity." See White v. N.H. Dep't of Corr., 221 F.3d 254, 262 (1st Cir. 2000) (quoting Hernández-Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 47 (1st Cir. 1998); see also Kearney v. Town of Wareham, 316 F.3d 18, 23 (1st Circ. 2002).

      Upon review of defendants' motion for summary judgment, the Court notes that the only challenge to Cruz-Alicea's prima facie case of retaliation is with respect to the second prong. To that effect, defendants contend that Cruz-Alicea has not set forth evidence that he suffered an adverse employment action. *Memorandum in Support of Motion for Summary Judgment*, p.18 (Docket No. 95). The defendants further contend that all the incidents complained of by Cruz-Alicea have, reasonable, non-discriminatory reasons behind them. Hence, defendants allege, dismissal of plaintiff's retaliation cause of action is warranted.

      The second prong requires the Court to determine whether he suffered an employment action that could "materially change the conditions of [his] employment." Gu v. Boston Police Dept., 312 F.3d 6, 14 (1st Cir. 2003). Material changes include, demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees. Id. (citing Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 47 (1st Cir. 1998). Viewing the evidence in the light most favorable to Cruz-Alicea, the Court concludes that,

1  **CIVIL NO. 02-1383 (SEC)**                8

2  he has set forth sufficient evidence as to his reduction in duties and harassment[1] to support his

3  contention that he suffered an adverse action, pursuant to Gu, 312 F.3d at 14.

4        2. Defendants' legitimate non-discriminatory reason

5        Absent direct evidence of discrimination, once the plaintiff establishes a *prima facie* case,

6  the burden of production shifts to the defendant to "articulate some legitimate, nondiscriminatory

7  reason" for its action. Burdine, 450 U.S. at 253. "If they do so, the burden then shifts back to the

8  plaintiff ' to demonstrate that the proffered reason is a pretext for discrimination. Id. at 256.

9        Defendants argue that Cruz-Alicea's "loss of duties and responsibilities, and the applicable

10 supplemental salary is the direct result of his decision to withdraw from his interim appointment".

11 *Memorandum in Support of Motion for Summary Judgment*, ¶ 4 p. 11 (Docket No. 95). Cruz-Alicea

12 was taken off  the stand-by shift program since "he was unable to properly handle work situations

13 on his own during the weekend stand-by shift and, moreover, continued to show a great deal of

14 resistance to report to his immediate supervisor, Meiller". Id., ¶ 3 p.15.. Defendants' also argue that

15 Cruz-Alicea was asked to leave the "Operación Salidero" work-site since he was not requested by

16 Meiller to be there. Id., p.16. Also, Meiller's failure to approve overtime pay of union employees

17 happened since "Meiller explained that he had a lot of work, thus, the delay" occurred. Id., ¶ 1 p.17.

18 Lastly, defendants argue that Cruz-Alicea was asked to return his cellular phone and that he was

19 unable to "mention by name one such engineer" that had a cellular phone assigned to him. Id., ¶ 4

20 p.17.

21        3. Cruz-Alicea's response to defendants' non-discriminatory reason

22        Cruz-Alicea responds to defendants' reasons by stating that: (1) his position of Administrator

23 of the Guayama area was never revoked. *Plaintiff's Statement of Contested Facts*, # 15 p. 3 (Docket

24 No. 116); (2) defendants not only disregarded Cruz-Alicea's opinion but they "duplicated the work,

25 refused to follow advise that ultimately was put into action and stripped Cruz-Alicea of any authority

26 to act with the personnel that was under his supervision. *Memorandum in Opposition of Motion for*

27

28

[1]See section B, supra.

**CIVIL NO. 02-1383 (SEC)**                              9

*Summary Judgment*, p. 13-15 (Docket No. 108); (3) the stand-by shifts started at 4:00 p.m. on Fridays and ended the Friday after that at 4:00 p.m. As to December 24, 1999, plaintiffs allege that Cruz-Alicea was not the stand-by supervisor in charge of the stand-by shifts for that day. **Plaintiff's Appendix T**, *Margarita Arzola's Statement Under Penalty of Perjury*, p. 32-33 (Docket No. 114); (4) Although Meiller told Cruz-Alicea that he could not approve the overtime on time since he had a lot of work, there are other employees who attest that "Meiller refused to approve the overtime submitted by Cruz" and that "The only supervisor that was subjected to that treatment was Cruz [Cruz-Alicea]" **Plaintiff's Appendix M**, *Jesus Caraballo's Statement Under Penalty of Perjury*, p. 20 (Docket No. 114); (5) Cruz-Alicea mentions 4 persons in charge of public and private projects that had cellular telephones. *Memorandum in Opposition of Motion for Summary Judgment*, p. 20-21 (Docket No. 108).

In light of the above, the Court concludes that the plaintiff has proffered enough evidence to refute defendants' non-discriminatory reason for summary judgment purposes. Consequently, this Court must **DENY** summary judgment with respect to defendants' allegation that Cruz-Alicea's has not proven a *prima facie* case of retaliation.

**III. Conclusion**

**WHEREFORE**, the Court hereby **RECOMMENDS** that the defendants motion for summary judgment (Docket No. 93) with respect to Cruz-Alicea's timeliness, hostile work environment and retaliation claims be **DENIED** and that plaintiff's supplemental state-law claims not be dismissed.

Under the provisions of 28 U.S.C. § 636 and Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of the Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140,155 (1985; reh'g denied, 474 U.S. 1111 (1986); Davet v. Maccorone, 973 F.2d 22, 30/31 (1st Circ. 1992).

**CIVIL NO. 02-1383 (SEC)**                                10

**SO RECOMMENDED**

In San Juan, Puerto Rico, this 22ᵗʰ day of July, 2005.

*S/ Gustavo A. Gelpi*

**GUSTAVO A. GELPI**

**United States  Magistrate Judge**